NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YOHAN CHOI, <br><br> Plaintiff, <br><br> v. <br><br> ABF FREIGHT SYSTEM, INC., <br><br> Defendant. | Civ. No. 14-7458 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

    This matter comes before the Court upon cross-motions for summary judgment filed by Defendant ABF Freight System, Inc. (ECF No. 13) and Plaintiff Yohan Choi (ECF No. 14). The parties oppose each other's motions. (ECF Nos. 15, 16.) The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons below, the Court will grant Defendant's motion for partial summary judgment and deny Plaintiff's motion for summary judgment.

BACKGROUND

    In October 2013 Plaintiff Choi entered into an agreement with Defendant ABF, a common carrier, to transport Plaintiff's personal property from Houston, Texas to Ocean, New Jersey. Pursuant to the parties' agreement, Plaintiff loaded his household goods into a ReloCube, which Defendant picked up for transport to New Jersey. However, Plaintiff never received his belongings. On November 1, 2013 Defendant notified Plaintiff that there had been a motor vehicle accident that caused Plaintiff's items to be destroyed in a fire. On December 1, 2014 Plaintiff filed a one-count Complaint in federal court asserting breach of contract and carrier liability under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §

1

14706. The Carmack Amendment imposes liability on a carrier for the value of goods lost or damaged during shipment, except where the carrier has limited its liability in accordance with certain requirements. The parties agree that the Carmack Amendment applies; however, they dispute whether Defendant validly limited its liability. Defendant's attempt to limit its liability is reflected in the bill of lading, which memorializes the transportation agreement between the parties. The bill of lading signed by Plaintiff stated, in relevant part:

> 4. LIMITED CARGO LIABILITY: Since the customer is responsible for loading and unloading of the goods, liability coverage only applies to damage caused by ABF negligence. In the event of damage caused by ABF's negligence, ABF's liability shall be limited to $0.10 per pound per item damages ("Standard Coverage"). Coverage in addition to the Standard Coverage is available and can be purchased by contacting ABF prior to the drop date. The Standard Coverage, or any additional coverage purchased is liability coverage for carrier negligence, not insurance for your goods. In the event of cargo damage caused by one of the following catastrophic events: trailer fire, vehicle collision, vehicle overturn or complete container theft; ABF includes coverage of $3.00 per pound per piece with a maximum liability of $7,500 per ReloCube. ABF does not provide insurance for your goods. ABF assumes the liability of a common carrier, subject to the provisions of 49 U.S.C. 14706.
>
> [. . .]
>
> 13. APPLICABLE LAW: Customer acknowledges that ABF is a general commodity carrier and that this shipment will be subject only to the laws and regulations governing commodity carriage. This shipment shall be subject only to Federal laws and statutes. No state laws or statutes shall apply.
>
> By signing below, Customer agrees to the terms and conditions herein, ABF notes attached to this Bill of Lading, the rules and special service charges in ABF III series and the terms and conditions in the Uniform Straight Bill of Lading (UBL) as published in the National Motor Freight Classification in effect on the date of this Bill of Lading. To the extent that language contained in this Bill of Lading/Price Quote is inconsistent with the rules and special service charges in ABF III series or the terms and conditions of the UBL, the terms and conditions herein shall prevail. Driver signature only acknowledges receipt of freight.

(Fry Decl. Ex. A, ¶¶ 4, 13, ECF No. 13-3.) In addition, Defendant's Liability Statement reads:

> ABF offers two types of liability coverage for your goods. The first coverage is catastrophic liability which covers your items at $3.00 per pound per piece, subject to a maximum of $60,000 per trailer and $7,500 per ReloCube for these specific events only:

> trailer or ReloCube fire, trailer overturn, trailer collision, or complete trailer or ReloCube theft.  The standard coverage is included with your quote at no additional charge.
>
> The second coverage is carrier negligence liability which covers your items at 10 cents per pound per piece for loss or damage caused by carrier negligence.  The customer acknowledges that ABF's liability is limited in consideration of a lower rate than would otherwise be applicable and that additional coverage is available at a higher price. Additional coverage for loss or damage due to carrier negligence is available as follows:
>
> - For a $75 charge, your coverage would increase to $1.00 per pound per item up to a maximum of $20,000 per trailer and $2,500 per ReloCube.
> - For a $125 charge, your coverage would increase to $2.00 per pound per item up to a maximum of $40,000 per trailer and $5,000 per ReloCube.
> - For a $175 charge, your coverage would increase to $3.00 per pound per item up to a maximum of $60,000 per trailer and $7,500 per ReloCube.

(Fry Decl. Ex. E, ECF No. 13-3.)  Plaintiff asserts that he is entitled to summary judgment because he has established a prima facie case of carrier liability under the Carmack Amendment and seeks damages of $61,088.29, which is the alleged value of the destroyed goods.  Defendant seeks partial summary judgment limiting its liability to $7,500 pursuant to the limited liability stated in the bill of lading.

DISCUSSION

A. Legal Standard

Summary judgment should be granted if "the movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that may "affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  *Id*.  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).  The movant

"always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Then, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

   B. Analysis

"The Carmack Amendment provides the exclusive remedy against an interstate common carrier for a breach of a contract of carriage." *Travelers Prop. Cas. Co. of Am. v. A.D. Transp. Express, Inc.*, No. 04-5830 JAP, 2007 WL 2571957, at *2 (D.N.J. Aug. 31, 2007).  The statute "imposes full liability upon carriers for the actual loss or injury to the property caused by a carrier contractually bound to deliver goods on bills of lading." *Royal Sun Alliance Ins., PLC v. Nat'l Consolidation Servs. LLC*, No. 09-2862 (MLC), 2010 WL 2483987, at *2 (D.N.J. June 4, 2010) (citing 49 U.S.C. § 14706(a)(1)).  A shipper establishes a prima facie claim under the statute by demonstrating "(1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) amount of damages." *Beta Spawn, Inc. v. FFE Transp. Servs., Inc.*, 250 F.3d 218, 223 (3d Cir. 2001).  Then the burden shifts to the carrier to demonstrate that it was not negligent and that "damage was caused solely by an act of God, the public enemy, the act of the shipper itself, public authority, or the inherent vice or nature of the gods." *Id.* at 226.

In addition, the Carmack Amendment permits a carrier to limit its liability through a written agreement with the shipper.  49 U.S.C. §§ 14706(c)(1)(A), (f)(1).  To limit its liability,

the carrier must "(1) maintain a tariff within prescribed guidelines of the Interstate Commerce Commission ['ICC']; (2) obtain the shipper's agreement as to [the shipper's] choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment." *Carmana Designs Ltd. v. N. Am. Van Lines, Inc.*, 943 F.2d 316, 319 (3d Cir. 1991); *see also Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179, 186 (3d Cir. 2006). The first requirement has since been altered by recent statutes. The Surface Transportation Board ("STB") replaced the ICC, and the filing of tariffs was abolished except for limited circumstances including the transportation of household goods. *See Emerson*, 451 F.3d at 187 n.6; 49 U.S.C. § 13702(a).

Here, the parties do not seem to dispute the satisfaction of requirements (1), (2), and (4) with respect to Defendant's attempt to limit its liability under the Carmack Amendment. Thus the Court need only consider requirement (3): whether Defendant provided Plaintiff with a reasonable opportunity to choose between at least two different levels of liability. Defendant argues that Plaintiff was provided the opportunity to choose among different levels of liability because paragraph four of the bill of lading states that, with respect to liability for damage caused by Defendant's negligence, the "standard" liability is $0.10 per pound per item but the shipper has the option to purchase additional coverage. (Fry Decl. Ex. A, ECF No. 13-3.) Specifically, the Defendant's Statement of Liability explains that the shipper may pay (1) an additional $75 for $1.00 per pound coverage up to $2,500 per ReloCube, (2) an additional $125 for $2.00 per pound coverage up to $5,000 per ReloCube, or (3) an additional $175 for $3.00 per pound coverage up to $7,500 per ReloCube. (Fry Decl. Ex. E, ECF No. 13-3.) In response, Plaintiff argues that the two or more levels of liability requirement is not satisfied because while Defendant offered multiple liability options for negligence, Defendant only offered one level of

liability with respect to damage or loss caused by a catastrophic event: $3.00 per pound with a maximum liability of $7,500 per ReloCube.  (Fry Dep. at 25:22-26:4, ECF No. 14-10; Fry Dep. at 39:10-16, ECF No. 14-11.)  Plaintiff asserts that in order to limit its liability due to a catastrophic event such as what occurred here, Defendant needed to have offered a choice between at least two levels of liability for catastrophic events but failed to do so.

      The Court is not persuaded by Plaintiff's argument.  Cases discussing the limitation of liability rule merely require the shipper be provided a reasonable opportunity to choose between two or more rates with corresponding levels of liability; there is no language imposing any specific requirements of the options or demanding multiple options with respect to each subset of liability coverage.  *See Kemper Ins. Cos., Inc. v. Fed. Express Corp.*, 252 F.3d 509, 513 (1st Cir. 2001) (not finding "any case in which a court invalidated a contract providing two discrete levels of coverage").  Plaintiff has not identified, nor has this Court discovered, any authority suggesting that a carrier must provide at least two levels of catastrophic coverage in order to validly limit its liability for catastrophic coverage under the Carmack Amendment.  After all, the two-option requirement does not demand complete liability coverage for the full value of the transported good.  *See Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 324 F. Supp. 2d 713, 726 (W.D. Pa. June 29, 2004) ("The requirement to offer two options . . . has never meant that a carrier must provide a shipper with a full value rate."); *see also Kemper*, 252 F.3d at 513 (1st Cir. 2001) (upholding the carrier's limitation of liability where the shipper had the opportunity to choose between $100 and $500 of liability coverage even though the undelivered jewelry was valued at significantly more than $500); *American Cyanamid Co. v. New Penn Motor Express, Inc.*, 979 F.2d 310, 314 (3d Cir. 1992) (explaining that although Carmack Amendment Section 14706(c)(1)(A) permits a carrier of non-household goods to limit its

liability "to a value established . . . by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation," this language does not require that a limitation of liability be reasonably related to the actual value of the goods being transported).  Since the two options that a carrier must offer to limit its liability need not provide complete liability coverage for the transported goods, there does not seem to be a basis for requiring at least two options for each category of liability coverage.[1]  Therefore, because the bill of lading and its affiliated documents offer a choice between at least two different levels of liability, although for negligence, Defendant has satisfied the third required element for limiting its liability under the Carmack Amendment.  The Court will enforce the limited liability specified on the bill of lading, grant Defendant's partial motion for summary judgment, deny Plaintiff's motion for summary judgment, and limit Plaintiff's damages to a maximum of $7,500.  *See Hoover v. ABF Freight System, Inc.*, No. 06-1301, 2008 WL 1805392 (C.D. Il. Apr. 18, 2008) (enforcing a substantially similar liability limitation provision where the shipper's household goods were destroyed and damaged in transport).

## CONCLUSION

For the reasons above, the Court will grant Defendant's motion for partial summary judgment and deny Plaintiff's motion for summary judgment.  A corresponding Order follows.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

---

[1] In addition, Plaintiff's prior experience with Defendant also supports finding a limitation of liability here.  Prior to his move in 2013, Plaintiff had previously chosen to contract with Defendant to move his belongings in 2009 and had agreed to the same liability provision.  *See Travelers*, 2007 WL 2571957, at *5 (finding that the parties' previous extensive dealings constituted evidence of a limitation agreement); *Carmana Designs*, 943 F.2d at 321 (stating that "[a] shipper's sophistication, abundant experience, or extensive prior dealings with a carrier may constitute additional evidence of a limitation agreement between the parties").